```
            IN THE UNITED STATES DISTRICT COURT

            FOR THE WESTERN DISTRICT OF TEXAS

                      WACO DIVISION

UNITED STATES OF AMERICA      *
                              *
                              *
VS.                           * CRIMINAL ACTION NO. W-08-CR-189
                              *
MICHAEL JOSEPH MCKINLEY       *    April 8, 2009
```

<u>BEFORE THE HONORABLE WALTER S. SMITH, JR., JUDGE PRESIDING</u>
<u>                    SENTENCING PROCEEDINGS</u>

APPEARANCES:

| | |
|---|---|
| For the Government: | Mary Kucera, Esq. |
| | Assistant United States Attorney |
| | PO Box 828 |
| | Waco, Texas  76701 |
| For the Defendant: | Joe Rodriguez, Esq. |
| | 1700 West Main Street |
| | Gatesville, Texas  76528 |
| Court Reporter: | Kristie M. Davis |
| | United States District Court |
| | PO Box 20994 |
| | Waco, Texas  76702-0994 |

Proceedings recorded by mechanical stenography, transcript produced by computer-aided transcription.

1  (April 8, 2009, 1:40, defendant present.)

2      MS. WILLIS:  Sentencing proceedings in Criminal Action
3  No. W-08-CR-189 styled United States of America vs. Michael
4  Joseph McKinley.

5      MS. KUCERA:  Mary Kucera for the United States, Your
6  Honor.

7      MR. RODRIGUEZ:  Joe Rodriguez for Mr. McKinley, Your
8  Honor.  Good afternoon.

9      THE COURT:  Good afternoon, Counsel.

10      Mr. McKinley, you also appeared before Judge Manske on
11  January the 29th of this year and entered a guilty plea.  He
12  has recommended that your guilty plea be accepted.

13      No objections have been filed.  I assume there are none,
14  Counsel?  Objections to the plea being accepted by this Court?

15      MR. RODRIGUEZ:  No, Your Honor.

16      THE COURT:  All right.  Then the plea will be accepted.

17      Mr. McKinley, have you had an opportunity to review the
18  presentence report in your case?

19      THE DEFENDANT:  Yes, sir.

20      THE COURT:  Have you read it and discussed it with
21  Mr. Rodriguez?

22      THE DEFENDANT:  Yes, sir.

23      THE COURT:  Do you have any comments or corrections to the
24  report that you'd like to call to my attention?

25      THE DEFENDANT:  No, sir.

1    THE COURT:  The government has filed an objection.
2    Ms. Kucera, would you like to present that?
3    MS. KUCERA:  Yes.  We have.  And we have a witness ready
4  if the Court would like to entertain that now.
5    THE COURT:  This would be the time.
6    MS. KUCERA:  Okay.
7    MR. RODRIGUEZ:  Your Honor, before we get started, I would
8  just like to point out for the record that the plea agreement
9  was oral and that Mr. McKinley did not waive his right to
10 appeal.
11   THE COURT:  That's what my notes reflect.
12   MR. RODRIGUEZ:  Thank you.
13   THE COURT:  Ms. Kucera?
14   MS. KUCERA:  Yes.  Your Honor, the government would call
15 Officer Rodney Wilmore to the stand.
16   (The witness was sworn.)
17                        DIRECT EXAMINATION
18 BY MS. KUCERA:
19   Q.   Sir, would you please state your name for the record?
20   A.   Rodney Wilmore.
21   Q.   And, sir, how are you currently employed?
22   A.   I'm employed as a police officer with the City of
23 Killeen.
24   Q.   How long have you been employed in that capacity?
25   A.   Three years, ma'am.

1    Q.   Were you an officer that was involved in the case
2  against Mr. Michael Joseph McKinley?
3    A.   Yes, ma'am.
4    Q.   Can you tell the Court a little bit about your
5  involvement with that case?
6    A.   Yes, ma'am.  I received a call through dispatch while
7  I was on patrol that an aggravated assault took place on the
8  roadway westbound 190 from Nolanville into the Killeen City
9  limits.
10   Q.   What did you do upon hearing that over dispatch?
11   A.   I started heading in that direction, ma'am.
12   Q.   Sir, do you remember what date that this would have
13 occurred on?
14   A.   I believe it was November 1st, 2008.
15   Q.   Can you tell the Court what you did after proceeding
16 in that direction?
17   A.   Yes, ma'am.  I just headed in that direction based
18 upon the information I was receiving over the radio that the
19 suspect had headed north through a neighborhood of the -- that
20 was by the Killeen city mall.
21   Q.   Was there any sort of vehicle description or suspect
22 description that was involved with this aggravated assault?
23   A.   Yes, ma'am.  It was a unique kind of vehicle.  It was
24 a black and white Ford Crown Victoria that was described or a
25 black and white vehicle.

1   Q.  Was there any indication as to how many individuals
2  were in the vehicle?
3   A.  Yes, ma'am.  One individual was reported as being in
4  the vehicle.
5   Q.  Okay.  Was a physical description or any identifiers
6  given in regards to who the individual or what the individual
7  looked like in the vehicle?
8   A.  Yes, ma'am.  A black male with dreadlock type hair.
9   Q.  Okay.  Did you ever locate that vehicle that day?
10   A.  I did, ma'am.
11   Q.  Okay.  Can you tell the Court what happened after you
12  located that vehicle?
13   A.  I attempted to conduct a traffic stop of that
14  vehicle.  The vehicle did not stop.  I pursued the vehicle for
15  approximately a quarter of a mile and then I stopped out with
16  it.
17   Q.  Okay.  Sir, when you were involved with this did you
18  have any particulars or did you ever find out anything that
19  actually happened on the roadway on 190 with this aggravated
20  assault?
21   A.  Yes, ma'am.  It was reported through dispatch and to
22  our MDT system, electronic messaging, that the suspect had
23  pointed a firearm at the reporting party victims.
24   Q.  Okay.  When you located the vehicle that day, did
25  you -- were you able to identify the driver?

1    A.   Yes, ma'am.

2    Q.   And who was the driver?

3    A.   The driver was identified as Michael McKinley, ma'am.

4    Q.   Can you tell the Court what happened when you located
5  the driver Mr. McKinley?

6    A.   Yes, ma'am.  Due to the fact that I had attempted to
7  have a traffic stop with my lights and sirens and he failed to
8  stop for about a quarter of a mile, when he stopped, and based
9  upon information that he may have a firearm, I had him out at
10 gunpoint.  He did not do as I was directing him to do and
11 eventually took him to the ground.

12   Q.   Did you place him under arrest that day?

13   A.   I did, ma'am.

14   Q.   Okay.  And what happened after you put him under --
15 or placed him under arrest?

16   A.   Well, what happened was a few things.  I located a
17 firearm within his car right next to the driver seat the center
18 console.

19   Q.   Was there anyone else in his vehicle?

20   A.   He stated that there was, ma'am.  He said that it
21 wasn't him that did the aggravated assault with the pistol,
22 that it was somebody that he dropped off.

23   Q.   Did you ever speak with the individuals or the
24 callers that called dispatch that day in regard to the
25 aggravated assault?

1    A.   Yes, ma'am.  I got ahold of an officer that was
2  talking to the victims and I asked them if there was anybody
3  else in the car in that -- the suspect vehicle and they said,
4  no, it was just that one black male with dreadlocks.  I noted
5  that Michael McKinley had dreadlocks.  And also we talked about
6  other descriptions that Michael McKinley fit.
7    Q.   Okay.  Sir, did the victims of this aggravated
8  assault, did they tell you what happened that day?  Did you
9  personally speak with them?
10   A.   Yes.  I did, ma'am.
11   Q.   And based on what they told you, what was your
12 understanding of what happened?
13   A.   My understanding of what happened was is they were
14 traveling westbound on Highway 190.  They were in the inside
15 lane.  The driver of -- the victim driver noticed Michael
16 McKinley drive up behind him in the black and white vehicle at
17 a high rate of speed is how he described it.  He felt alarmed
18 by that and pulled over into the outside lane in order to allow
19 Michael McKinley to pass.  Once he did that, the victim told me
20 that Michael McKinley pulled up next to him and pointed a
21 firearm at both him and his female passenger.  They both had
22 the same statements.  Made the same statements.  The female
23 said to me that she went to the floorboard because she felt
24 fear for her life and at one point the victim driver that
25 reported this stated to me that he knew he was going to get

1  shot or something to that effect.
2      Q.  What were the individuals' demeanors that day when
3  you spoke with them?
4      A.  They appeared to me to be upset and it was my
5  interpretation of what I saw was that they were in fear.
6      MS. KUCERA:  Your Honor, I pass the witness.
7      THE COURT:  What was the date of this occurrence?
8      THE WITNESS:  Sir, 11 -- I'm sorry.  It was November 1st,
9  2008.
10     THE COURT:  Thank you.
11     MS. KUCERA:  Your Honor, I pass the witness.
12     THE COURT:  Mr. Rodriguez?
13                    CROSS-EXAMINATION
14 BY MR. RODRIGUEZ:
15     Q.  Officer Wilmore, did you actually witness any of
16 these events that you discussed with the witnesses?
17     A.  I did not witness the assault that they described,
18 sir.
19     Q.  So you have no firsthand knowledge?
20     A.  No, sir.
21     MR. RODRIGUEZ:  I'll pass the witness.
22     MS. KUCERA:  Nothing further from this witness, Your
23 Honor.
24     THE COURT:  You may step down, sir.
25     Any other witnesses on this issue?

1       MS. KUCERA:  Not at this time, Your Honor.  I just would
2  like to tender and offer Government's Exhibit No. 1 and No. 2,
3  witness statements that have been shown to defense counsel
4  prior to this and provided in open file discovery.
5       MR. RODRIGUEZ:  Your Honor, at this time we'd object to
6  those statements.  I have seen them, but we're objecting
7  because we do not have the right to confront those witnesses
8  here today and we would like to do so.  And we can't
9  cross-examine these statements, Your Honor.  We object that --
10      THE COURT:  I think that objection would be hearsay which
11 is admissible in this type of hearing.  They'll be admitted.
12      (Exhibit(s) admitted:  G1, G2)
13      MR. RODRIGUEZ:  It's a confrontation objection, Your
14 Honor.
15      THE COURT:  It's the same objection, Counsel.
16      Any argument you wish to make on this particular
17 objection, Ms. Kucera?
18      MS. KUCERA:  Your Honor, just to point out to summarize a
19 few things in regards to the case and what Officer Wilmore just
20 testified to that he spoke with the victims that apparently
21 seemed to be pretty shook up.  The Court has their statements.
22 The description of the vehicle fit.  The description of the
23 individual that was pointing the firearm fit and then when
24 this -- Mr. McKinley was located that day, there was a firearm
25 within his reach in the vehicle.  He also made the statement to

1   the officer that apparently it wasn't him.  It was somebody
2   that he dropped off which is also a link to this offense
3   aggravated assault.  Thank you, Your Honor.
4           THE COURT:  Mr. Rodriguez, any response?
5           MR. RODRIGUEZ:  Your Honor, we would just like the Court
6   to note again that we cannot cross-examine or confront those
7   witnesses.  The government has provided no explanation as to
8   why these witnesses were not produced today and we believe that
9   they have a burden to do that, Your Honor.
10          THE COURT:  All right.  The Court will find that the
11  government's objections should be granted and the offense level
12  should be increased by four.
13          There are also objections that you filed, Mr. Rodriguez.
14  Are there any of those that need to be ruled on or that you
15  wish to present?
16          MR. RODRIGUEZ:  No, Your Honor.  I believe the presentence
17  investigation report reflects the -- that and so those are now
18  moot, Your Honor.
19          THE COURT:  I agree with you.
20          Then, Mr. McKinley, if you'd return to the lectern with
21  your attorney, please.
22          Mr. McKinley, do you have anything you would like to say
23  in your own behalf or in mitigation of punishment?  If you care
24  to, this would be your opportunity to do that.
25          THE DEFENDANT:  Yeah.  First of all, I'd like to apologize

1  to my family and my county.  Second of all, I didn't point no
2  firearm at anyone.  The car that the couple that said I did, I
3  didn't see them for nothing but three seconds.  I passed them
4  up on the highway and next thing I know I was getting pulled
5  over by the police.  Other than that, if I would have pointed
6  the firearm, I would have said I was guilty for it, but I
7  didn't do it.  So I can't say I'm guilty for that for pointing
8  the firearm at anyone.  And other than that, everything else is
9  correct.
10      THE COURT:  Anything to add, Mr. Rodriguez?
11      MR. RODRIGUEZ:  No, Your Honor.
12      THE COURT:  Anything further from the government?
13      MS. KUCERA:  No, Your Honor.
14      THE COURT:  Do you know of any legal reason why sentence
15  should not be imposed, Mr. Rodriguez?
16      MR. RODRIGUEZ:  No, Your Honor.
17      THE COURT:  Then the new offense level is 17.  The
18  criminal history is 2.  That results in a range of 27 to 33
19  months.
20      Do you know of any legal reason why sentence should not be
21  imposed, Mr. Rodriguez?
22      MR. RODRIGUEZ:  No, Your Honor.
23      THE COURT:  The Court will impose a period of
24  incarceration of 30 months to be followed by two years of
25  supervised release, a fine of $1,000 and there is a $100

1  mandatory assessment under the Victims of Crime Act.
2      Mr. McKinley, you have the right to appeal this matter.
3  If you desire to do that, you should give notice of appeal
4  within ten days of the entry of judgment.  If you're unable to
5  pay the cost of an appeal or to hire an attorney to represent
6  you in that endeavor, you should move to proceed in forma
7  pauperis and you should do that within the same ten-day period.
8      The clerk has for you now a letter setting forth your
9  rights in that regard in detail.
10     Any counts be dismissed, Ms. Kucera?
11     MS. KUCERA:  No, Your Honor.
12     THE COURT:  Any requests, Mr. Rodriguez?
13     MR. RODRIGUEZ:  Yes, Your Honor.  We'd ask the Court to
14 make a recommendation to the Bureau of Prisons that Mr.
15 McKinley be incarcerated in the Central Texas area or as close
16 thereto as possible.
17     THE COURT:  I'll make that recommendation.
18     MR. RODRIGUEZ:  Thank you.
19     THE COURT:  You may be excused.
20     (Hearing adjourned at 1:54.)
21
22
23
24
25

```
 1  UNITED STATES DISTRICT COURT )

 2  WESTERN DISTRICT OF TEXAS    )

 3

 4      I, Kristie M. Davis, Official Court Reporter for the

 5  United States District Court, Western District of Texas, do

 6  certify that the foregoing is a correct transcript from the

 7  record of proceedings in the above-entitled matter.

 8      I certify that the transcript fees and format comply with

 9  those prescribed by the Court and Judicial Conference of the

10  United States.

11      Certified to by me this 14th day of April 2009.

12

                            /s/ Kristie M. Davis
13                          KRISTIE M. DAVIS
                            Official Court Reporter
14                          P.O. Box 20994
                            Waco, Texas  76702-0994
15                          Telephone No.:  (254) 754-7444
                            kmdaviscsr@yahoo.com
16

17

18

19

20

21

22

23

24

25
```